So, next case for argument, U.S. v. Polk. Mr. Henderson? Again, Mr. Henderson. No chance to sit down. May it please the Court, Peter Henderson on behalf of Dayton Polk. This is another one of those cases that, pursuant to Thompson, needs to be remanded for a full resentencing in the district court. And the government's conceded that, so I'll take that as a given. I do want to address the substantive reasonableness of the sentence. Ordinarily, vacating the sentence would kind of move that out. But the district court may need some guidance on a remand as to what this court thinks of the sentence. The problem, I suppose, in terms of the law, is that there is a presumption on appeal that this court applies to a within-guidelines sentence. But the Supreme Court applies that presumption not sort of as an evidentiary burden on one side or the other, but to say, we've had two people look at this already, or two groups. We've had the district court look at it, and we've had the sentencing commission look at it, and they've come to the same outcome. And so appellate courts reviewing for an abuse of discretion should presume that it's going to be reasonable. And in this case, I think there are reasons to doubt both the sentencing commission's assessment of what's a reasonable sentence and the district court's assessment. And I think that that rebuts that presumption to a great extent. The sentencing commission promulgated this particular guideline to group 924C offenses with drug offenses, regardless of the severity of the drug offense. So it doesn't matter if you had one gram of crack cocaine or 1,000 grams. It's going to be the same guideline sentence if there is that 924C charge involved. That's what Mr. Polk faced. And so the sentencing commission doesn't discriminate between the severity of offenders. A drug kingpin is going to receive the same sentence under the guidelines as a small-time street dealer like Mr. Polk. The district court, I think, didn't critically look at that. I think the district court focused on Mr. Polk's recidivism. Mr. Polk has a lengthy criminal history. But what I note is that Mr. Polk's criminal history involves five trips to the Illinois Department of Corrections, each for two to four years at a time. And in Illinois, that's typically run at 50%, so really it's half of those sentences. Are these drug crimes? Two of them are drug crimes. And then there are two aggravated batteries and a robbery. So, again, we've said this in our briefs. Mr. Polk's not a saint. We're not trying to make that out. But a 35-year sentence for a gram of crack and a gun is wildly excessive to the sentencing goals in Section 3553A. Again, with this sort of presumption of reasonableness, I was at a loss at how to show that this was an unreasonable sentence. Certainly there are anecdotes about other cases where people who I think would be much more culpable or much more serious offenders got less time. That's not really helpful. The statistics are out there. This is a wildly disproportionate sentence for the amount of drugs involved compared to nationwide statistics. What was the increase based on the gun? Well, so the gun makes it not the regular career offender. The regular career offender, I believe, would be 262 to 327. And then usually you get 60 months for a 924C charge. And so that would be about 322 at the or, excuse me, 312. No, 322, I was right, at the low end. But what this guideline does is it then ramps it up another 40 months or so because they're brought in the same charge. So were you saying that the gun charge plus even a very small amount of drugs generates the long sentence? Right. That's 924C, that's the... Right, because the guideline when you have a career offender plus a 924C applies a particular guidelines range that doesn't discriminate based on drugs. Oh, so it's the career offender. It's the career offender that gets them into trouble, right. And that's the 360 to life. Right. And the government in probation have not read it quite correctly. They think that it's 360 to life plus 60 months. It's actually the total sentence is 360 to life. And so a bottom of the guideline sentence would be 300 months for the drugs plus 60 months for the gun. And there's a question about whether the judge correctly apprehended that. I think Judge Capalla did correctly understand that because he made a correction. I can look up the transcript page. It's in the sort of our statement of the case. He caught the mistake. So we didn't feel we could raise that argument. But, you know, it has pervaded the proceedings in terms of the government and probation, both suggesting that this was a bottom of the guideline sentence and it wasn't. It was, I mean, realistically speaking, this was the maximum sentence the court could have imposed. When you add the 851 notice to increase the statutory maximum from 20 to 30 on the drug count and then get 30 years, the maximum on the drug count, and then 60 months, which is the sentence in over 90 percent of the cases in 924C counts, this was a maximum sentence. So the 360 became 420? Right. The judge decided that a middle of the guideline sentence would be appropriate. One thing that we do fault the judge on, as we noted in our briefs, is the judge didn't really explain why 360 wouldn't be a sufficient sentence. The judge rejected the defense arguments and mitigation for a below guideline sentence, but didn't really explain why between 360 and 420, why 420 was the necessary, sufficient, but not greater than necessary sentence. And that goes into, again, I think that the nature and circumstances of the offense were not adequately addressed in this sentence. I think the 420 months was the result of somebody who has a significant criminal history and went to trial and sort of all this recidivism and personal characteristics, but it says nothing about the offense. And this is a low-level drug offense. This is not, there are probably... The 1.2 grams, how many doses does that make? I think it depends who you ask. A lot of people will say 0.1 grams is a dose. So it would be 12? Right. Some people would say half a gram. It's really not very much in the federal scheme of things. It's something that you see a lot at the state level and that he's already served some sentences for in the State Department of Corrections. But that's probably why he was kicked over because of his prior record, right? Well, I can only guess, but I think his prior record, and as soon as you can get enhancements, so he's got two drug offenses that makes him a career offender. He's got other crimes of violence that makes him an armed career criminal. The sentence is why he got kicked federally, exactly, because when you start at a presumptive 360 months to life, there's a lot of negotiating power, and you can bring down the full force of the government. So I'll reserve the rest of my time. Okay, thank you very much, Mr. Henderson. Mr. McKenzie? Thank you, Your Honor. My name is John McKenzie. I represent the United States. Your Honor, the question you had about how many doses it was, this was eight small bags of crack cocaine, half a gram or smaller or larger sometimes. But he had it bagged up into eight different... But I can't hear you. I'm sorry? I didn't hear you. He had what? He had it bagged up into eight different small bags that he was selling. We don't know how much he had already sold. He had cash on him. Presumably, he had already sold some. But there's no really question whether he was a dealer or a drug dealer or an armed drug dealer. It's clear that he was all of those things. It's a question of whether the sentence itself is reasonable in light of all the factors. As you go through that sentencing transcript, it's hard to imagine a district court making a better record of the factors it considered. Defense counsel and appellate counsel may disagree with the weighting decisions made by Judge Capallo. Why would you sentence a 35-year-old to a 35-year sentence? There's no likelihood that he's going to be an armed drug dealer in his 60s. Have you ever found someone like that? Have I? Yeah. Yes, Your Honor. In fact, it was argued before you last month in a case I listened to. It was Frankie Freeman, a person I prosecuted back in 1989. Got 17 1⁄2 years. He came out in his 50s. And then I was ordered to appear in state court for a jury panel, and he was being prosecuted yet again on drug cases. Well, that's 50. He was actually 60. He's actually 60, I believe, now. But this defendant would be out when he's 61 to 62. Pardon? This defendant would be out when he's 61 or 62 with good time. Well, how do you know he's going to be a good time guy? Exactly. You don't know that. Yeah, but look. There are many things that cost you good time in prison that don't necessarily signal that you're going to go back into the drug business when you're 70, right? No, but they can also show that you have no longer shown that you were going to go back and reintegrate in society. If you look at his jail conduct before he was sentenced, he has every motive and desire to present the best picture to Judge Cabal. So you really think he's going to be a dangerous criminal at the age of 70? He'll be out before then, Your Honor. How do you know he'll be out before then? Well, even if he had full time, it would have been... 420 months is 35 years, right? He would be 67. He was 32 at the time of crime and went into jail. Pardon? He was 32 at the time of the crime and went into jail. I can't predict the future, Your Honor, neither can Judge Cabal, but that's the role we leave to the district court judges. Well, there's a literature on elderly criminals which suggests that people in a violent business tend to burn out when they're middle-aged. Yes, sir. And there's also outliers, and people that continue to show they're recidivists by committing crimes when they're released from prison are more likely to continue even though they're older in time. And that's more of a common sense argument, but I think something that you could find anecdotal evidence in support of as well as against. Well, what do the statistics show on these elderly? I don't have those, Your Honor. The defense didn't bring those in front to the district court, and the district court didn't announce that it was considering any. Certainly the sentence imposed... Well, shouldn't the district judge consider the likelihood of elderly violent crime in sentencing people, giving people very long sentences? That's a factor the court can consider, especially if it's brought in front. Why do you think you can? You should have to consider it. Well, the court's talking about... Recidivism, right? And in this case, Judge Capallo did consider recidivism. In the pretrial services report, released on parole, violated, goes back to prison, comes out... Yeah, yeah, but look, we're talking about what he's going to be like at 70. So did the pre-sentence report say, oh, this guy is so violent that he's, you know, better keep him until 70, because in his 60s, he's going to be a terror. We don't know what the recommendation was, the private recommendation, but the PSR didn't say that at all. Right. And no statistics were given to the court on the record. So if you go through and look at the amount of time Judge Capallo spent on all of these different factors, as a district court judge is supposed to do, and did in this particular case, it's clear that he provided this court with an adequate basis in order to review his decision of reasonableness. There is no indication he abused his discretion in reaching this decision of 30 years plus 5 years for the 924C. Okay, well, thank you. Thank you, Your Honor. So, Mr. Henderson, do you have anything further? Briefly, Your Honor, I wanted to address the government's last point there. There theoretically is a difference between procedural reasonableness, or what we call that, and substantive reasonableness. I agree Judge Capallo made a very good record, but the reasonableness inquiry comes after Booker, because we want to avoid these sorts of Sixth Amendment concerns with judge found facts. And so what it did in Rita and Gull is it said appellate courts have this duty to review sentences for substantive reasonableness, whether this is a reasonable sentence. And as we cited in our brief, that shouldn't be an exercise in self-abnegation of saying, well, the district court weighed things, and so we're just going to defer to them. Unfortunately, that's what it has become around the country. I can only recall one case where a sentence has been reversed for being too high substantively. But we don't want to push over and make appellate courts a sentencing court either. No, absolutely not. And this is a very unusual case, 420 months for a gram of crack in a gun. And so it is abuse of discretion, right? And those questions get handled all the time on evidentiary matters, on other things that happen in the district court. But that doesn't mean that the appellate court never reverses under that standard. But that's what's happened with substantive reasonableness. And my worry is if no sentence can be unreasonable because of these presumptions and the deference, I think we're wading back into sort of these Sixth Amendment problems under Booker. But in any case, this is a case of a gram of crack in a gun in a 35-year sentence. Well, it's really not a question of whether there were improper factual findings. So to the extent that the Sixth Amendment is in the background here, we don't have judge-found facts that drove the sentence and there were mistakes made or errors in judgment made. It's just a discretionary call on whether the guideline sentence makes sense in this situation. And you're asking us to say it doesn't make sense in this situation. Exactly. And what I'm saying is if the guidelines become not de jure mandatory but de facto mandatory, I think we have the same problems where a district court's decision on the guidelines basically binds, is mandatory. If they impose a guideline sentence, it will never be reversed. By operation of the presumptions. Right, exactly. And it's been 10 years since Booker. There's one case in the circuits that's been reversed for a sentence that's too high. Maybe that just means the district courts are doing a good job.  Thank you, Your Honor. So, Mr. Henderson, you're a public defender in both these cases. Correct, Your Honor. So we thank you for your defense.